UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BREK PILLING,<br><br>Defendant. | Case No. 4:22-cr-00282-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Defendant Brek Pilling's Motion to Dismiss Count One of the Indictment (Dkt. 33) and Motion to Dismiss Count Six of the Indictment (Dkt. 36). For the reasons explained below, the Court will grant the first motion and deny the second.

## BACKGROUND

The Clean Air Act (CAA) authorizes the Environmental Protection Agency (EPA) to establish standards for protecting the public from hazardous air pollutants. 42 U.S.C. § 7412(h)(1). The EPA exercised that authority by promulgating the National Emissions Standard for Hazardous Air Pollutants (NESHAP). Among other things, the NESHAP identifies asbestos as a hazardous air pollutant and establishes "work practice standards" that govern the handling

MEMORANDUM DECISION AND ORDER - 1

and removal of asbestos. 40 C.F.R. § 61.140–157. The asbestos work practice standards apply to "owners" and "operators" of demolition and renovation activities. § 61.145(a). Under the CAA, failure to comply with the NESHAP is a crime. *See* 42 U.S.C. § 7413(c)(1).

In this case, the United States charges Defendant Brek Pilling with seven counts of violating the CAA. Specifically, the Indictment (Dkt. 1) alleges that the defendant caused the demolition of two buildings in Burley, Idaho, without following the NESHAP work practice standards. Each count of the Indictment corresponds to a separate work practice standard that the defendant allegedly violated. *See Indictment* ¶¶ 8–21, Dkt. 1.

On January 19, 2024, the defendant filed motions to dismiss counts one and six of the Indictment. Dkts. 33 & 36. He argues that Count One fails to allege a criminal offense, or alternatively, is based on erroneous legal instructions given to the grand jury. *See Motion*, Dkt. 33. The defendant also argues that Count Six of the Indictment should be dismissed because it fails to allege an essential element of the charged crime—namely, it does not link the alleged "visible emissions" to the relevant "source" of those emissions. *See Motion*, Dkt. 36.

The defendant's motions are fully briefed and ripe for decision. Oral argument would not aid the decisional process and the Court now resolves the motions on the briefing.

**MEMORANDUM DECISION AND ORDER - 2**

## LEGAL STANDARDS

An indictment must only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). When an indictment is challenged, the court "must accept the truth of the allegations" and confine its review to the "four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citing *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir.1996)). Given this low bar, indictments are "rarely" dismissed. *United States v. Brewbaker*, 87 F.4th 563, 572 (4th Cir. 2023). Nevertheless, "district courts have as much of a responsibility to police criminal indictments as they do civil complaints." *Id.*

An indictment must be dismissed if it fails to allege a criminal offense. FED. R. CRIM. P. 12(b)(3)(B)(v). The deficiency may be either factual or legal. That is, an indictment may fail to allege facts that—even assumed true—would constitute the alleged crime. Or an indictment may allege many facts but fail to identify a criminal offense under law. In either case, the indictment must be dismissed.

## DISCUSSION

Count One of the Indictment will be dismissed because it does not allege a criminal offense. Count Six will not be dismissed because it sufficiently alleges all essential elements of the charged offense.

1. **Count One of the Indictment will be dismissed because it fails to allege a criminal offense.**

MEMORANDUM DECISION AND ORDER - 3

Count One of the Indictment charges the defendant with failing to "thoroughly inspect" a facility for the presence of asbestos before causing it to be demolished. *Indictment* ¶¶ 8–9, Dkt. 1. According to the defendant, Count One is legally deficient because the CAA does not criminalize the failure to "thoroughly inspect" a facility for asbestos. The Court agrees.

The government may only prosecute the defendant for knowingly violating a "requirement or prohibition" of the NESHAP. 42 U.S.C. § 7413(c)(1).[1] The key question, then, is whether thoroughly inspecting a facility for asbestos is a "requirement." The relevant portion of the NESHAP is found at 40 C.F.R. § 61.145. That section, entitled "[s]tandard for demolition and renovation," is divided into three paragraphs.

Paragraph (a), entitled "Applicability," describes the circumstances under which, and individuals to whom, "[t]he requirements of paragraphs (b) and (c) of this section apply[.]" § 61.145(a). For example, if the amount of "regulated asbestos-containing material" (RACM) present in a facility exceeds a certain threshold, paragraph (a)(1) dictates that "all the requirements of paragraphs (b) and (c) of this section apply[.]" § 61.145(a)(1). But if less RACM is present, paragraph

---

[1] A violation of the NESHAP work practice standards constitutes a violation of the CAA. 42 U.S.C. § 7413(c)(1); *see also United States v. San Diego Gas & Elec. Co.*, No. 06 CR 0065 DMS, 2006 WL 3913457, at *5 (S.D. Cal. Nov. 21, 2006).

(a)(2) provides that only certain specified notification requirements in paragraph (b) are applicable. § 61.145(a)(2).

Paragraphs (b) and (c) provide the substantive requirements for notification and emission controls, respectively. § 61.145(b) & (c). Both paragraphs begin with mandatory language that introduces a list of requirements. § 61.145(b) ("Each owner or operator of a demolition or renovation activity to which this section applies *shall*: [stating requirements].") (emphasis added); § 61.145(c) ("Each owner or operator of a demolition or renovation activity to whom this paragraph applies, according to paragraph (a) of this section, *shall* comply with the following procedures: [stating requirements].") (emphasis added).

The government relies on paragraph (a) of Section 61.145 as the legal basis for Count One of the Indictment. Specifically, the government cites paragraph (a)'s reference to "thoroughly inspect[ing]" a facility for the presence of asbestos before commencing demolition activities. According to the government, that reference constitutes a "requirement," the violation of which is a crime under the CAA. The defendant disagrees, characterizing the reference to a thorough inspection as a "threshold issue" for determining the applicability of the substantive regulatory requirements, which are set forth in paragraphs (b) and (c) of Section 61.145.

**MEMORANDUM DECISION AND ORDER - 5**

To evaluate these two competing interpretations of paragraph (a), the relevant language must be viewed in context. Paragraph (a) of Section 61.145 states, in full:

> To determine which requirements of paragraphs (a), (b), and (c) of this section apply to the owner or operator of a demolition or renovation activity and prior to the commencement of the demolition or renovation, thoroughly inspect the affected facility or part of the facility where the demolition or renovation operation will occur for the presence of asbestos, including Category I and Category II nonfriable ACM. The requirements of paragraphs (b) and (c) of this section apply to each owner or operator of a demolition or renovation activity, including the removal of RACM as follows:
> . . .

40 C.F.R. § 61.145(a).

Each party advances textual and contextual support for its own interpretation of paragraph (a). To begin, the defendant argues that it is not clear from the face of the regulation that failing to conduct a thorough inspection constitutes a crime. Several textual clues support his position.

First, paragraph (a) is titled "Applicability," which suggests that it contains threshold criteria rather than substantive requirements. A section title will not supersede the plain meaning of a regulation, *Oregon Pub. Util. Comm'n v. I.C.C.*, 979 F.2d 778, 780 (9th Cir. 1992), but titles are part of the context from which courts derive meaning when interpreting legal texts, *see Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469, 1475 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER - 6**

Second, paragraph (a) lacks the kind of mandatory language that is characteristic of legal requirements. *See Maine Community Health Options v. United States*, 140 S.Ct. 1308, 1320 (2020) ("The first sign that the statute imposed an obligation is its mandatory language: 'shall.'"). That omission is especially notable here, where paragraphs (b) and (c) *do* contain mandatory language. *See* § 61.145(b) ("Each owner or operator . . . *shall* . . .") (emphasis added) & (c) ("Each owner or operator . . . *shall* comply with the following procedures . . .") (emphasis added). While not conclusive, the lack of any mandatory language in paragraph (a) strongly supports the defendant's position that conducting an inspection is not a requirement.

Third, paragraph (a) does not indicate who must arrange or conduct the thorough inspection. The first sentence of paragraph (a) is phrased in the imperative mood and lacks a subject. It states only that, "[t]o determine which requirements of paragraphs (a), (b), and (c) of this section apply . . . thoroughly inspect the affected facility . . . for the presence of asbestos[.]" § 61.145(a). The government correctly notes that the imperative mood "is used to give directions or express commands." *Gov.'s Memo. in Opp.* at 10, Dkt. 41 (quoting THE OXFORD AMERICAN DICTIONARY AND LANGUAGE GUIDE 641 (1999)). But that does not resolve the question of *who* must follow the direction or command. Indeed, the implied subject of an imperative statement is "you;" that is, the reader. *See* Verbs:

**MEMORANDUM DECISION AND ORDER - 7**

Voice and Mood, Purdue University Online Writing Lab, *available at* https://owl.purdue.edu/owl/general_writing/academic_writing/active_and_passive_voice/verbs_voice_and_mood.html (last visited Feb. 23, 2024) ("Though it is not stated, the understood subject of imperative sentences is you."). Ultimately, the government may be correct that the EPA intended to imply that "owners" and "operators" are responsible for ensuring that facilities are thoroughly inspected. *Gov.'s Memo. in Opp.* at 10 n.5, Dkt. 41 ("The subject here, owners and operators . . . [is] implied."). But if so, the EPA failed to make that intention clear on the face of the regulation.

Finally, the express purpose of a thorough inspection is "[t]o determine which requirements . . . apply[.]" § 61.145(a). A regulation could impose an obligation that is *both* a requirement *and* a threshold step for determining whether additional requirements apply. For example, the NESHAP could have provided that owners and operators 'must' thoroughly inspect facilities for asbestos in order to determine which additional requirements apply. But that kind of language is nowhere to be found in paragraph (a). Instead, it simply describes an inspection as the means for determining "which requirements" of the regulation apply. § 61.145(a). The most natural reading of the text suggests that a thorough inspection is a threshold step for determining the applicability of the work practice standards rather than an independent work practice standard of its own.

**MEMORANDUM DECISION AND ORDER - 8**

Moving beyond the text, the defendant highlights a broader reason why his interpretation of paragraph (a) must be correct. Namely, the government's approach would "unmoor the NESHAP from the presence of asbestos entirely and impose a requirement on every person renovating or demolishing" a facility "to conduct a thorough inspection for asbestos . . . regardless of whether there was any reason to believe asbestos was present in the building." *Def.'s Memo. in Supp.* at 13, Dkt. 35. In other words, the government's interpretation would impose felony criminal liability even in cases where no asbestos is actually present in the demolished or renovated facility. And that would, "in effect, broaden the CAA from regulating hazardous substances to regulating the renovation and demolition of every facility in America." *Id.*

The government raises textual and policy-based arguments of its own. First, it argues, paragraph (a)'s reference to the "requirements of *paragraphs (a)*, (b), and (c) of this section" tells the reader that paragraph (a) contains requirements. § 61.145(a) (emphasis added). Next, paragraph (a) is written in the imperative mood, which "is used to give directions or express commands." *Gov.'s Memo. in Opp.* at 10, Dkt. 41 (quoting THE OXFORD AMERICAN DICTIONARY AND LANGUAGE GUIDE 641 (1991)). If the EPA had intended to create a mere threshold step for determining the applicability of the work practice standards, it could have easily made that clear, for example, by inserting passive language (*e.g.*, an owner or

**MEMORANDUM DECISION AND ORDER - 9**

operator "should" thoroughly inspect a facility). Finally, the government argues, the defendant's interpretation of paragraph (a) would incentivize owners and operators of demolition activities to "put[] their heads in the sand" in order to duck the *mens rea* element for criminal liability under paragraphs (b) and (c). *Gov.'s Memo. in Opp.* at 12, Dkt. 41.

Both parties make valid points, but ultimately, the defendant is correct. It is simply not clear from the text of the regulations that failing to thoroughly inspect a facility for asbestos is a "requirement," the violation of which constitutes a crime under the CAA. Nor is the Court persuaded by the two non-binding cases the government cites. In *Fried v. Sungard Recovery Services Inc.*, a federal district court in Pennsylvania held that paragraph (a) of Section 61.145 imposed a duty on an owner or operator "to inspect its facility regardless of the amount of asbestos it was aware of before the inspection." 925 F. Supp. 364, 372 (E.D. Pa. 1996). That holding does align with the government's position, but *Fried* was a civil case. The court there simply did not discuss the relevant standards governing the adequacy of a criminal indictment. *See id.*

The government also cites *United States v. Farley*, where a federal district court in Florida upheld an indictment that alleged a failure to thoroughly inspect a facility for the presence of asbestos. Case No. 8:15-cr-133-T-26MAP, 2015 WL 6956557, at *4 (M.D. Fla. Nov. 10, 2015). *Farley* is factually and procedurally on

**MEMORANDUM DECISION AND ORDER - 10**

point, but again, the court's brief analysis of Section 61.145(a) is not persuasive. In *Farley*, the court explained that "the introductory portion of § 61.145(a) – '[t]o determine which requirements of paragraphs (a), (b), and (c), of this section apply to the owner or operator'– alerts the reader that requirements are contained in paragraph (a)." *Id.* at *4. But, as explained above, the textual analysis is not that simple, because the stated purpose of conducting a thorough inspection is *to determine* which of those requirements apply. Put another way, the regulation frames a thorough inspection as a predicate to the application of the substantive requirements.

In the end, the Court is left with a difficult interpretive question: "Does the CAA impose independent criminal liability on an "owner or operator" for failing to thoroughly inspect a facility before commencing demolition or renovation activities?" But this is a criminal case. And in criminal cases, courts have clear instructions for interpreting unclear laws. "It is axiomatic that criminal statutes, including even regulations creating petty misdemeanors, are to be strictly construed; and that in doubt as to the law, we should follow the rule of lenity." *United States v. Ryberg*, 43 F.3d 1332, 1334 (9th Cir. 1995). Thus, under the "rule of lenity," courts must "limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government.'" *United States v.*

**MEMORANDUM DECISION AND ORDER - 11**

*Millis*, 621 F.3d 914, 916–17 (9th Cir. 2010) (quoting *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006)).

It is unclear whether paragraph (a) of Section 61.145 subjects an "owner or operator" to independent criminal liability for failing to "thoroughly inspect" a facility before commencing demolition or renovation activities. Applying the rule of lenity, the Court will therefore construe the regulation against the government and dismiss Count One of the Indictment.

2.  **Count Six of the Indictment adequately states the elements of the charged offense.**

Count Six of the Indictment charges the defendant with causing the discharge of "visible emissions" to the "outside air" without following one of the prescribed methods of emissions control or waste treatment. *Indictment* ¶¶ 18–19, Dkt. 1. According to the defendant, the Indictment fails to allege a necessary element of the offense because it does not link the alleged "visible emissions" to the relevant "source"—that is, the demolition activities at 1222 and 1226 Overland Avenue, Burley, Idaho.

Section 61.150(a) prohibits an "owner or operator of any source" covered by the NESHAP from discharging "visible emissions to the outside air during the collection, processing (including incineration), packaging, or transporting of any asbestos-containing waste material generated by the source" without "us[ing] one of the emission control and waste treatment methods specified" elsewhere in the

**MEMORANDUM DECISION AND ORDER - 12**

regulations. 40 C.F.R. § 61.150(a). As the defendant correctly notes, the discharged "visible emissions" must have been "generated by the source" at issue. *See id.*

> In Count Six of the Indictment, the government alleges:
>
> From the approximate time period of February 17, 2018, through August 2018, within the District of Idaho and elsewhere, the defendant, BREK PILLING, owner and operator of a demolition activity at the 1222 and 1226 Overland Avenue facility that would and did disturb and remove at least 160 square feet and at least 35 cubic feet of RACM from facility components, did knowingly discharge and cause others to discharge visible emissions to the outside air during the collection, packaging, and transporting of asbestos-containing waste material, without using one of the emission control and waste treatment methods specified in paragraphs (a)(1) through (4) of Title 40, Code of Federal Regulations, Section 61.150, and did aid and abet others in doing so.
> . . .

*Indictment* ¶ 18, Dkt. 1.

According to the defendant, the Indictment fails to expressly link the alleged "visible emissions" to the relevant demolition activities at 1222 and 1226 Overland Avenue. That omission, he argues, is not a "mere technicality," but a "complete failure to charge an essential element of a crime" which requires the dismissal of Count Six. *Def.'s Reply* at 2, Dkt. 53 (quoting *United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999)).

For support, the defendant relies on the Ninth Circuit's decision in *United States v. Du Bo*, 186 F.3d 177 (9th Cir. 1999). There, a defendant was charged with

**MEMORANDUM DECISION AND ORDER - 13**

committing extortion in violation of the Hobbs Act, 18 U.S.C. § 1851. The indictment alleged that the defendant acted "unlawfully" and "wrongfully," but it did not allege that he acted "knowingly or willfully"—the applicable standard of criminal intent. *Id.* at 1179. Concluding that criminal intent was an "essential element" of the charged offense and that omitting allegations of knowledge or willfulness was not a "minor or technical deficienc[y]," the Ninth Circuit held that the indictment must be dismissed. *Id.* at 1180–81.

Here, Count Six of the Indictment against Mr. Pilling could be more precise, but it is not fatally flawed. Viewed as a whole, the Indictment clearly links the "visible emissions" alleged in Count Six to the relevant "source" of asbestos-containing material. First, Count Six expressly links the defendant to a particular demolition activity—the one "*at the 1222 and 1226 Overland Avenue facility*[.]" *Indictment* ¶ 19, Dkt. 1 (emphasis added). Then, the government alleges the underlying facts showing why that particular demolition activity is governed by the NESHAP. *See id.* ¶ 19 ("[The] demolition activity *at 1222 and 1226 Overland Avenue facility* . . . would and did disturb and remove at least 160 square feet and at least 35 cubic feet of RACM from facility components[.]") (emphasis added). Read as a whole, the Indictment plainly alleges—albeit without explicitly stating—that the alleged "visible emissions" were generated by the demolition activities at the relevant source.

**MEMORANDUM DECISION AND ORDER - 14**

The Court will not adopt the defendant's "hypertechnical" reading of the Indictment. *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 860 (7th Cir. 1998). Indictments must be "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (quoting *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982), *cert. denied*, 460 U.S. 1086 (1983)). Applying those principles here, the Court concludes that Count Six is sufficiently stated. At most, it contains a "minor or technical deficienc[y]" that does not justify dismissal. *Id.* at 1180.

Viewing the Indictment "in its entirety and construing it according to common sense," *id.* at 1181, Count Six plainly links the alleged "visible emissions" to the relevant demolition activities at 1222 and 1226 Overland Avenue, Burley, Idaho. The Court will therefore deny the defendant's Motion to Dismiss Count Six of the Indictment for Failure to State an Offense (Dkt. 36).

## ORDER

IT IS ORDERED that:

1. Defendant Brek Pilling's Motion to Dismiss Count One of the Indictment (Dkt. 33) is **GRANTED**. Count One of the Indictment (Dkt. 1) is hereby dismissed because it does not allege a criminal offense.

2. Defendant Brek Pilling's Motion to Dismiss Count Six of the Indictment (Dkt. 36) is **DENIED**.

DATED: February 27, 2024

B. Lynn Winmill
U.S. District Court Judge