UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BREK PILLING,<br><br>　　　　Defendant. | Case No. 4:22-cr-00282-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Defendant Brek Pilling is charged with seven counts of violating the Clean Air Act (CAA).[1] The government alleges that he caused the demolition of two buildings in Burley, Idaho, without complying with the asbestos "work practice standards" set forth in the National Emissions Standard for Hazardous Air Pollutants (NESHAP), 40 C.F.R. § 61.140–157.

Trial is set to begin on March 4, 2024. The parties have filed various motions in limine. *See* Dkts. 44, 45, & 48. The Court's ruling on these motions is set forth below.

# LEGAL STANDARDS

---

[1] The Court dismissed Count One of the Indictment in a Memorandum Decision and Order (Dkt. 78) entered February 27, 2024.

**MEMORANDUM DECISION & ORDER - 1**

1.  **Motions in Limine**

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, they are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). Rulings on motions in limine are preliminary opinions that are "entirely within the discretion of the district court." *Id.; see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, such rulings are provisional and therefore are "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Accordingly, at trial, the court will entertain objections on individual proffers as they arise, even though the proffer falls within the scope of a denied motion in limine. *See Luce*, 469 U.S. at 41–42 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

2.  **Federal Rules of Evidence 401, 402, & 403**

The rules governing relevant evidence, Federal Rules of Evidence 401, 402, and 403, are often central in deciding motions in limine. Rule 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probably than it would be without the evidence; and (b) the fact is of consequence in

**MEMORANDUM DECISION & ORDER - 2**

determining the action. Rule 402 provides that, with certain exceptions, relevant evidence is admissible. Rule 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Unfair prejudice refers to an undue tendency to influence a decision on an improper basis, such as an emotional response, or with evidence designed to elicit a response from the jurors that is not justified by the evidence. *See United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Even if there is only a modest likelihood of unfair prejudice or a small risk of misleading the jury, evidence that presents only slight probative value must be excluded. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). Additionally, cumulative evidence may be excluded because it does no more than replicate other admitted evidence. *See United States v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979).

## DISCUSSION

**1.    Defendant's Motion in Limine (Dkt. 48)**

The defendant filed a motion in limine seeking to exclude six categories of evidence. The government opposes the motion as to four of those categories.

    **A.    Evidence related to the cause of the fire.**

The defendant seeks to bar the government from suggesting or offering evidence to show that: arson caused the fire at the buildings in Burley, Idaho, in January 2018; the buildings caught fire under suspicious circumstances; a pipe bomb was discovered nearby; or the defendant was in any way responsible for the fire. According to the defendant, evidence and argument on those subjects would be irrelevant and substantially outweighed by the considerations set forth in Rule 403.

The government explains that it does not intend to present evidence of the alleged arson as other-act evidence under Rule 404(b). However, the government believes it should be allowed to reference and present evidence of the arson for the purpose of providing context and a "coherent and comprehensible story regarding the commission of the crime." *Gov.'s Resp.* at 2, Dkt. 50 (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995)). Specifically, the government explains that it will be offering evidence of statements the defendant made during an interview with ATF investigators following the alleged arson. Thus, the government argues, the fact that ATF was investigating a suspected arson is necessary "groundwork" for the defendant's statements.

The government is prohibited from suggesting or offering evidence to show that the buildings were destroyed by arson, that a pipe bomb was present in a nearby facility, or that the defendant was responsible for the fire that destroyed the

buildings. It also prohibited from suggesting that the buildings caught fire under suspicious circumstances, *except* as specifically allowed below. Such references would undoubtedly lead the jury to speculate about the defendant's involvement in and culpability for the fire. Whatever minimal probative value such evidence may have is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time. FED. R. EVID. 403.

However, the government must be allowed to provide basic context for its other evidence, including the statements the defendant made during his interview with ATF. To ensure that the government can "offer a coherent and comprehensible story regarding the commission of the crime[,] it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Vizcarra-Martinez*, 66 F.3d at 1013.

Accordingly, in laying foundation for the defendant's recorded statements, the government will be permitted to (1) identify the interviewer as an ATF agent and (2) very briefly indicate why the agent interviewed the defendant. **However.** In doing so, neither the witness nor the government may state or imply that arson was suspected, that the fire arose under suspicious circumstances, that a pipe bomb was present in the area, or that the defendant was suspected of being involved in the

MEMORANDUM DECISION & ORDER - 5

fire. The witness may <u>only</u> indicate that he interviewed the defendant in the course of conducting an investigation related to the fire that destroyed the buildings.

Careful compliance with these limitations will minimize juror speculation as while ensuring that the government can provide sufficient context for its evidence.[2]

### B. Evidence related to the dangers of asbestos.

The defendant also seeks to prevent the government from offering evidence that asbestos is "deadly," that it may cause serious diseases, and that "no level of exposure is considered safe." *Def.'s Memo. in Supp.* at 5, Dkt. 48-1. He argues that such evidence is irrelevant and unfairly prejudicial because actual harm is not an element of the charged offenses and there is no evidence that anyone involved in the demolition and clean-up suffered any adverse health consequences. *Id.* at 5–6.

The government responds that the dangerousness of asbestos is relevant to the defendant's motive for not undertaking proper abatement and demolition measures. That is, the difficulty and expense of properly managing asbestos—both

---

[2] To be sure, the Court would approach this motion quite differently if the government offered admissible evidence of the defendant's involvement in the fire as evidence of his motive, plan or scheme in evading compliance with the asbestos regulations. Such evidence may well be admissible under Rule 404(b). However, the government apparently has no evidence to make that connection or feels that it is unnecessary or inappropriate to offer such evidence for other reasons. Having chosen not to pursue the issue directly by presenting evidence of Mr. Pilling's involvement, they cannot suggest his involvement indirectly by inference or innuendo.

of which flow from the material's dangerousness—is the "why behind everything in this case." *Gov.'s Resp.* at 3–4, Dkt. 50.

Evidence of the dangers of asbestos is not relevant to the issues in this case. The government's creative theory for how that evidence is relevant to the defendant's motive is quite a stretch. Even in the government's own words, it is the "difficult[y] and expens[e]" of properly managing asbestos that allegedly motivated the defendant to forego the proper abatement and demolition measures—*not* the dangerousness of the substance.

This Court came to the same conclusion under similar circumstances in *United States v. King*, No. CR-08-002-E-BLW, 2009 WL 1045885 (D. Idaho Apr. 17, 2009). There, a defendant was charged with violating the Safe Drinking Water Act (SDWA). Before trial, both parties filed motions in limine. *Id.* at *1. The government sought to bar the defendant from offering evidence that his conduct had not actually resulted in environmental harm. The Court agreed because the lack of actual environmental harm was not an affirmative defense under the SDWA. *Id.* at *1. But the Court did not stop there. Turning to the defendant's motion in limine, the Court held that the government could not "have it both ways. It succeeded in its argument that the [environmental harm] is irrelevant to the commission of the crime. It cannot now be permitted to provide the jury with

**MEMORANDUM DECISION & ORDER - 7**

references to the harmful nature of the fluids without causing undue delay of the trial or unfair prejudice to [the defendant]." *Id.* at *3.

The dangers of asbestos inhalation are not relevant to any element of the charged offenses. And, to the extent those dangers may be indirectly relevant to the defendant's alleged motive, that relevance is substantially outweighed by the undue delay and unfair prejudice that would accompany the presentation of such evidence. *See King*, 2009 WL 1045885 at *3. Therefore, unless the relevance of such evidence becomes clear in the context of trial, it will be excluded.

### C. Beliefs and opinions about ownership of the buildings and demolition company.

The defendant seeks to exclude evidence of any "[u]nsubstantiated belief or opinion" held in the "local community" about his ownership of the buildings or demolition company. *Def.'s Memo. in Supp.* at 7, Dkt. 48-1. He argues that such "speculative" and "uninformed" testimony would be irrelevant and unfairly prejudicial. *Id.* In response, the government explains that it will not offer any "unsubstantiated" beliefs or opinions of community members, but it does intend to introduce an email from the defendant's father to the defendant which ostensibly reveals the father's belief that the defendant owned the buildings. *Gov.'s Resp.* at 5, Dkt. 50.

At first blush, evidence indicating that the defendant's father believed the defendant to be an owner of the buildings does not appear relevant to whether he

actually was an owner. However, both parties have indicated that the defendant's alleged ownership of the buildings and demolition company will be a key issue at trial. *See Trial Briefs*, Dkts. 75 & 76. And, to the extent that the direct evidence bearing on ownership is inconclusive, evidence of the father's belief may have probative value as circumstantial evidence. Moreover, whatever prejudice that evidence may have against the defendant would not be unfair. Defense counsel will have the opportunity to challenge the weight of the evidence.

Accordingly, the Court will allow the government to offer evidence indicating that the defendant's father believed the defendant to be the owner of the buildings.

2.   **Government's Motions in Limine**

The government has also filed to two motions in limine. Dkts. 44 & 45. The first motion seeks to limit the scope of the defendant's cross-examination of Richard Martinez, a government witness. The second motion requests a ruling on the admission of certain expert testimony by John Pavitt.

A.   **Cross-Examination of Richard Martinez**

The government intends to call Richard Martinez as an expert witness at trial. Martinez is a chemist at the Environmental Protection Agency's National Enforcement Investigations Center (NEIC). He analyzed samples for asbestos content in this case.

**MEMORANDUM DECISION & ORDER - 9**

In 2020, Martinez was suspended from work for five days in connection with failures in his duties as a Waste Control Officer at the NEIC. *Gov.'s Motion* at 1–2, Dkt. 45. Following a related investigation, the EPA Office of Inspector General (OIG) issued a report (the "OIG Report") addressing "Staffing Constraints, Safety and Health Concerns" at the NEIC laboratory. *Id.* And, in June of 2023, the EPA's Office of Criminal Enforcement, Forensics and Training Professional Integrity and Quality Assurance (PIQA) disclosed a summary of a statement (the "PIQA Statement") that Martinez made to investigators about his suspension and the matters addressed in the OIG Report. *Id.* at 2. The PIQA Statement primarily focuses on waste-handling concerns at the NEIC but includes one reference to the NEIC's "failing asbestos program." *Gov.'s Motion* at 2, Dkt. 45.

The government seeks to prevent the defendant from cross-examining Martinez about his suspension, the OIG Report, and the PIQA Statement (except to the extent it specifically references the asbestos program). According to the government, those subjects are irrelevant and do not implicate Martinez's character for truthfulness. The defendant responds by arguing that all three subjects are relevant. Namely: the suspension bears on Martinez's expert qualifications and reliability, and the OIG Report and PIQA Statement reflect the "state of affairs at the NEIC at the time of its involvement in this case." *Def.'s Resp.* at 3, Dkt. 51.

To be sure, a criminal defendant's right to confront witnesses does not include the right to "pursue irrelevant inquiries or exercise complete control over the extent of the cross-examination." *United States v. Brown*, 936 F.2d 1042, 1048 (9th Cir. 1991). Nevertheless, a defendant must be given "reasonable latitude" and allowed to fully examine the underpinnings of an expert's testimony. *Smith v. State of Illinois*, 390 U.S. 129, 132 (1968) (quoting *Alford v. United States*, 282 U.S. 687, 692 (1931)).

Martinez's suspension arguably bears on the reliability of his expert testimony. True, he was suspended for reasons apparently unrelated to asbestos-content testing—the subject about which he will testify. But it is up to the jury to decide how much weight to give, or not give, the defendant's credibility challenges. At this stage, it is enough that Martinez was suspended for his duty-related failures while employed at the NEIC, and that the fact of his suspension does appear to have some tendency to discredit his performance of other job duties, such as testing asbestos content.[3]

The OIG Report and PIQA Statement are a different story. Based on the information now available to the Court, both of those materials address largely—if not entirely—unrelated concerns about the NEIC's waste-disposal program. To the

---

[3] The Court may revisit this conclusion in the context of trial. For example, if the government is able to make clear during its direct examination of Martinez that his suspension is not relevant to his testimony, the government may renew its request to limit cross-examination.

**MEMORANDUM DECISION & ORDER - 11**

extent that is true, the Report and Statement are irrelevant and off limits on cross-examination. In short, the fact that there were deficiencies in a separate and discrete program at the NEIC does not bear on the reliability of the asbestos testing conducted in this case.

On the other hand, to the extent the OIG Report and PIQA Statement do address problems (1) at the NEIC testing facility and (2) within the asbestos program, specifically, those materials are fair game on cross-examination. Problems within the NEIC testing program potentially bear on the reliability of any testing performed at the NEIC facility. Additionally, any references within those materials to the asbestos program is potentially relevant to the reliability of asbestos testing in this case.

The government also argues that Federal Rules of Evidence 404(a)(1) and 404(b)(1) preclude the defendant from cross-examining Martinez about his prior suspension. Those rules bar the use of character and other act evidence to prove that a person acted in accordance with a certain character trait on a particular occasion. But neither rule applies to the defendant's use of Martinez's suspension to rebut the government's assertion that Martinez is a reliable expert. In this context, evidence of the suspension is not being offered to prove the witness's character, but instead to rebut the government's representation of Martinez as a

**MEMORANDUM DECISION & ORDER - 12**

reliable expert whose testimony should be given special weight in light of his experience and expertise.[4]

### B.     Testimony of John Pavitt

The government also intends to call John Pavitt as an expert witness at trial. Pavitt is an asbestos inspector at the EPA who will testify both as a fact witness and an expert witness. The government seeks a pre-trial order allowing Pavitt to testify as a "regulatory expert" in order to "orient the jury as to the 'requirements of federal regulations and what routine practices' of the regulated community should be 'according to the regulations.'" *Gov.'s Motion* at 1–2, Dkt. 44 (quoting *United States v. Seelig*, 622 F.2d 207, 213–14 (6th Cir. 1980)). Specifically, the government asks that Pavitt be allowed to:

- Explain that the Clean Air Act regulates the handling and removal of asbestos through a National Emissions Standard for Hazardous Air Pollutant (NESHAP), codified in 40 C.F.R. §§ 61.141, 145, and 150;
- Explain "the applicability of the asbestos NESHAP;"

---

[4] The government states that, if the defendant is truly concerned about Martinez's expert qualifications, he should have filed a *Daubert* motion. That criticism fails to recognize that an expert may be sufficiently qualified to clear the *Daubert* threshold but still have gaps in their training or expertise that can be explored on cross-examination. The admissibility of expert testimony is not altogether binary—the Court may both allow an expert to testify *and* allow an opposing party to challenge the expert's credibility on cross-examination. *See, e.g., Alpha Display Paging, Inc. v. Motorola Comm. and Electronics, Inc.*, 867 F.2d 1168, 1171 (8th Cir. 1989) ("Motorola questioned the expert to determine whether he had complied with the ethical provisions governing forecasts made by accountants. The cross-examination was proper because it elicited testimony that could help the jury determine what weight to give the expert's testimony.").

- Provide and explain the regulatory definitions of various terms, such as "facility component," "owner or operator of a demolition or renovation activity," "demolition," "facility," "regulated asbestos-containing material," "friable asbestos material," and "waste generator;" and
- Explain "what th[e] work practice standards require."

*Gov.'s Motion* at 4–7, Dkt. 44.

The defendant objects that Pavitt's proposed testimony is comprised of legal conclusions, usurps the Court's role of instructing the jury, usurps the jury's role of applying the law to the facts, is unhelpful, and creates a risk of confusing the jury.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witnesses qualified as an expert by knowledge, skill, experience, training, or educations, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In general, "an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (citing Note, *Expert Legal Testimony*, 97 Harv. L. Rev. 797 (1984)). That is because it is the Court's duty to instruct the jury on the applicable law. Still, in cases involving complex and technical regulatory frameworks, limited expert testimony on the applicable law may be appropriate to enable the jury to understand the evidence offered at trial.

**MEMORANDUM DECISION & ORDER - 14**

*See, e.g., Bilzerian*, 926 F.2d at 1294 (finding expert testimony appropriate to "help a jury understand unfamiliar terms and concepts" in "complex cases involving the securities industry").

The government identifies various subjects upon which Pavitt should be permitted to testify as a "regulatory expert." Most are inappropriate subjects for expert testimony.

<u>Testimony about the applicability of the asbestos NESHAP, "what the work practice standards require," and what owners and operators "should" do to comply with those standards.</u>

Pavitt may not opine on the applicability of the asbestos NESHAP, what he believes the work practice standards require, or what he believes owners and operators "should" do to comply with those requirements.

First, opinions about the applicability and meaning of the requirements constitute "legal conclusion[s]." *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her legal conclusion, *i.e.*, an opinion on an ultimate issue of law.") (internal quotation omitted). Such testimony would invade "the distinct and exclusive province" of the Court to instruct the jury on the applicability and meaning of the law. *Id.* (internal quotation omitted). Second, testimony about what owners and operators "should" do to comply with the requirements would also invade the province of the jury to apply the law to the facts. It is the jury's duty to determine

**MEMORANDUM DECISION & ORDER - 15**

whether the defendant did what he "should" have done to comply with the applicable law.[5] Finally, allowing Pavitt to explain when the legal requirements apply and what they require would create a risk of juror confusion, were the witness's interpretation or description to differ in any respect from the Court's final instructions.

<u>Testimony about the meaning of technical terms within the regulation.</u>

Pavitt may, however, explain technical terms and concepts within the regulations that are likely unfamiliar to the jury and that are pertinent to his testimony. Indeed, the asbestos work practice standards contain several technical terms that are likely unfamiliar to the average juror. *See, e.g.*, 40 C.F.R. § 61.141 (defining "friable asbestos material" and "waste generator").

At the end of trial, the Court will instruct the jury on the law and the meaning of any technical terms that the jury must understand in order to deliberate. During trial, however, the government's witnesses may offer testimony that involves the use of technical terms with which the jury is likely unfamiliar. If so, it may be helpful for the jury to understand the meaning of those technical terms.

---

[5] This kind of expert testimony is admissible in other contexts. For example, where the elements of a civil claim or criminal charge incorporate industry standards or concepts of "reasonableness" within a particular field, expert testimony may be relevant. *See, e.g.*, *King v. GEICO Indem. Co.*, 712 F. App'x 649, 651 (9th Cir. 2017) ("Although it is well established that experts may not give opinions as to legal conclusions, experts may testify about industry standards, and the reasonableness of an insurer's claims handling is generally an issue of fact."). Not so here.

Accordingly, to the extent it is necessary for the jury understand his testimony, Pavitt will be allowed to explain the meaning of technical terms used in the NESHAP. Conversely, Pavitt will not be allowed to interpret ordinary terms that the average juror is likely to understand. For example, the term "owner or operator of a demolition or renovation activity" is defined in ordinary language in the regulations and is easily understood without technical knowledge or experience. Accordingly, Pavitt will not be allowed to offer his own interpretation of that and other similarly non-technical terms.

## ORDER

IT IS ORDERED that:

1. The defendant's Motion in Limine (Dkt. 48) is **GRANTED, in part, and DENIED, in part,** as explained above.

2. The government's Motion in Limine to Limit Cross-Examination of EPA Witness (Dkt. 45) is **GRANTED, in part, and DENIED, in part,** as explained above.

3. The government's Motion in Limine to Introduce Regulatory Expert Testimony (Dkt. 44) is **GRANTED, in part, and DENIED, in part,** as explained above.

4. Despite the rulings outlined in this Order, in limine rulings are always subject to change depending on how the evidence unfolds at trial. Accordingly,

during trial, the parties may renew their efforts to introduce or exclude evidence that the Court has said it will introduce or exclude.

DATED: March 1, 2024

_____
B. Lynn Winmill
U.S. District Court Judge